

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-19-2002

# Nedmac Assoc Inc v. Camden

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-4534

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Nedmac Assoc Inc v. Camden" (2002). *2002 Decisions.* Paper 415.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/415

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

                      UNITED STATES COURT OF APPEALS
                          FOR THE THIRD CIRCUIT



                              No. 01-4534



                      NEDMAC ASSOCIATES, INC.,

                                   Appellant

                                   v.

                          CITY OF CAMDEN



           ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
                     THE DISTRICT OF NEW JERSEY

                    (Dist. Court No. 01-cv-00782)
             District Court Judge: Stephen M. Orlofsky



             Submitted Under Third Circuit LAR 34.1(a)
                           July 15, 2002

         Before: SCIRICA, ALITO, and FUENTES, Circuit Judges.

                 (Opinion Filed: July 19, 2002)



                        OPINION OF THE COURT



PER CURIAM:
     This case arises from a Chapter 11 petition for bankruptcy relief filed by Nedmac
Associates, Inc. ("Nedmac").  Nedmac operates the Parkade Building in the City of
Camden ("City"), pursuant to a fifty-year ground lease with the City that was executed on
September 27, 1954 ("Lease").  To recover money that was allegedly overpaid in real
estate taxes, Nedmac filed an adversary complaint against the City.  The Bankruptcy
Court dismissed Nedmac's adversary complaint, and the District Court affirmed.
Nedmac appeals from this ruling.  As the parties are well aware of the history of these
proceedings and the facts involved, we need not repeat them here.
     On appeal, Nedmac alleges that the District Court erred in: (1) the ruling that the
City did not breach Article 4 of the Lease; (2) the ruling that Nedmac was entitled to no
remedy notwithstanding the City's breach of Article 10 of the Lease; (3) the refusal to set
aside the 1995 Tax Sale Certificate issued and purchased by the City; and (4) the refusal
to set aside the Notice of Unsafe Structure issued by the City.
     Our review of the District Court's determination is plenary.  In re O'Brien
Environmental Energy, Inc., 188 F.2d 116, 122 (3d Cir. 1999).  "In reviewing the
decision of the Bankruptcy Court, we exercise the same standard of review as the District
Court, that is, we review the Bankruptcy Court's legal determinations de novo, its factual

findings for clear error, and its exercise of discretion for abuse thereof." Id.

First, Nedmac alleges a breach of Article 4 of the Lease, which sets forth Nedmac's obligations to pay property taxes. The Bankruptcy Court concluded that the City did not beach Article 4 of the Lease because Article 4 imposes no positive obligations on the City to appeal property assessments on Nedmac's behalf. Bankr. Ct. Memop. at 18, in App. at 59a. Article 4 of the Lease provides:

> LESSEE TO PAY TAXES, ETC. Lessee agrees that as additional rent it
> will pay and discharge all taxes, charges and assessments, water and sewer
> rents assessed, charged, imposed or levied, whether by the nation, state, city
> or any other public authority, upon so much of the demised premises or the
> buildings or improvements that may be constructed thereon and devoted to
> a use other than for the parking of automobiles, on or before the date or
> dates that the same become due and payable, and within ten (10) days
> thereafter produce and deliver to Lessor for inspection proper and
> sufficient receipts therefor, and to pay all water and sewer rents for services
> furnished for any part or portion of said building notwithstanding its use.

Lease, in App. IV at 443a. Thus, Nedmac is required to pay real estate taxes on the portion of the building devoted to non-parking uses.

It is clear that Article 4 does not impose any obligations on the City, but "merely sets forth the responsibilities of the tenant to pay all property taxes." Dist. Ct. Memop. at 10, in App. at 25a ("Nedmac appears to argue that Article 4 requires the City, as Nedmac's landlord and as the record owner of the Parking Lot, to correct an excessive tax assessment based on an allegedly improper apportionment of space contained in the 1992 Librizzi appraisal. The plain language of Article 4 cannot support such a strained reading of the 1954 Lease."). Nedmac argues that the Bankruptcy Court's analysis was flawed because it treated the issue as a dispute between a real estate taxpayer and a taxing municipality instead of as an issue between a tenant and landlord. However, Nedmac provides no legal reasoning supporting this argument. Without citing any basis in law, Nedmac asserts that Article 4 of the Lease somehow obligated the City as a landlord to ensure that the methodology used by the tax assessor was proper. As the District Court observed, the proper procedure for pursuing this claim was to file an appeal with the Tax Board. Dist. Ct. Memop. at 10-11, in App. at 25a-26a. Instead of appealing the tax assessments to the Tax Board, Nedmac simply stopped paying its property taxes, and now attempts to raise this issue by alleging a breach of Article 4 of the Lease. This argument has no merit, and we agree with the Bankruptcy Court's and District Court's holdings on this issue.

Additionally, regarding Nedmac's third argument that the Bankruptcy Court should have set aside the 1995 Tax Sale Certificate, Nedmac concedes that "if this Court upholds the District Court's affirmance of the Bankruptcy Court's determination under Point I above, no grounds will exist for setting aside the 1995 Tax Sale Certificate." Br. of Appellant at 31. Having determined that the District Court properly agreed with the Bankruptcy Court on this point, we also agree that there is no basis to set aside the 1995 Tax Sale Certificate. In any case, Nedmac was time-barred from challenging the validity of the Certificate. See Dist. Ct. Memop. at 13, in App. at 28a.

Second, Nedmac claims that the City breached Article 10 of the Lease and therefore that it is entitled to damages from the City equivalent to the excess real estate taxes it paid. That is, Nedmac claims that it is entitled to the amount of damages that it would have received had the hearing before the Tax Board occurred. Article 10 of the Lease provides:

> LESSEE MAY CONTEST THE VALIDITY OF TAX LIENS. It is agreed
> that the Lessee, upon giving written notice thereof to the Lessor, shall not
> be required to pay, discharge or remove any tax, assessment, tax title, or
> any judgment or lien against the demised premises . . . so long as the
> Lessee shall in good faith and with diligence, at his own expense, contest
> the same or the validity thereof by appropriate legal proceedings, and that
> pending any such legal proceedings, the Lessor shall not have the right to
> pay, remove or discharge the taxes, assessments, tax lien, tax title,
> mechanics' lien or judgment thereby contested unless necessary to protect
> the title to said premises, and that such delay of the Lessee in paying the

same until final determination of such disputed matter shall not be deemed a default in the conditions of this lease: Provided that, on demand of the Lessor, the Lessee shall furnish indemnity satisfactory to the Lessor against any loss or damage on account thereof.

Lease, in App. IV at 447a-448a. Thus, Article 10 allows Nedmac not to pay assessed taxes pending an appeal of a real estate tax assessment.

Nedmac filed its tax appeal with the Tax Board on March 28, 1998. At the hearing in June 1998, the appeal was dismissed pursuant to N.J.S.A. 54:3-27 because Nedmac had not paid its real estate taxes for 1994, 1995, and 1996. The Bankruptcy Court agreed that the City had breached Article 10 of the Lease by raising Nedmac's non-payment of taxes before the Tax Board, which prompted the Tax Board to dismiss Nedmac's 1996 tax appeal. The Bankruptcy Court concluded, however, that Nedmac was not entitled to recover damages because it could have entirely mitigated any damages by appealing the dismissal to the New Jersey Tax Court. Bankr. Ct. Memop. at 25-26, in App. at 66a-67a. To go forward with an appeal to the Tax Board, an appealing taxpayer must present evidence that is "definite, positive and certain in quality and quantity to overcome the presumption" given to an initial tax assessment. Pantasote Co. v. City of Passaic, 100 N.J. 408, 412-13 (1985) (citation omitted). Inadequacies in the assessment methodology are insufficient to defeat this presumption of validity. Id. at 415. Therefore, the District Court determined that "the Bankruptcy Court was justified in concluding from the absence of evidence in the record that Nedmac did not raise the issue of the City's breach of Article 10 at the hearing, did not possess its own appraisal at the time of the hearing, and did not request an adjournment of the proceedings so that it could procure such an appraisal." Dist. Ct. Memop. at 18, in App. at 33a.

Because of the deference given to determinations of evidentiary sufficiency and witness credibility by trial courts, we do not disturb the findings of the Bankruptcy Court that Nedmac did not submit an appraisal and did not raise the Article 10 provision at the County Board. Bankr. Ct. Memop. at 32, in App. at 73a ("There is no indication in the record that the debtor . . . argued the issue of Article 10 of the lease . . . . [T]he debtor apparently did not have an appraisal to demonstrate true value at the time of its 1996 tax appeal. The debtor does not even allege that it had any evidence of value at that time."). The Bankruptcy Court considered the evidence that Nedmac had in 1996 and concluded that Nedmac did not have sufficient appraisal evidence for the 1996 appeal to proceed. That is, Nedmac failed to show that it would have prevailed before the Tax Board in 1996. Therefore, it could not have suffered any damages as a result of the Article 10 breach. Id. at 74a. Thus, the Bankruptcy Court properly found that Nedmac was entitled to no damages as a result of the City's breach of Article 10 of the Lease.

Finally, Nedmac contends that the Notice of Unsafe Structure issued by the City to Nedmac on January 20, 1998 should be set aside. Because this argument challenges the Bankruptcy Court's findings of fact, our review is for clear error. The District Court concluded that the Bankruptcy Court's findings of fact were not clearly erroneous. The inspection on Martin Luther King Day may or may not have occurred, but the record is not clear enough to conclude that the Bankruptcy Court plainly erred. The Morabito report confirmed the unsafe conditions in the building. The City's failure to act on the Notice does not go to the issue of whether the Notice was originally issued in bad faith. In sum, the facts are not unambiguous about the propriety of the issuance of the Notice of Unsafe Structure, but the lower courts' conclusions were not plainly in error in determining that the issuance of the Notice did not constitute a breach of the duty of good faith and fair dealing. Therefore, the Bankruptcy Court properly refused to set aside the Notice of Unsafe Structure.

For the foregoing reasons, we affirm the District Court's order affirming the Bankruptcy Court's dismissal of Nedmac's adversary complaint.